IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDOLPH L. INGRAM,             ) | |
| ) | |
| Plaintiff,         ) | |
| ) | |
| v.                                                      ) | Case No. CIV-11-298-SPS |
| ) | |
| MICHAEL J. ASTRUE,              ) | |
| Commissioner of the Social       ) | |
| Security Administration,             ) | |
| ) | |
| Defendant.       ) | |

## OPINION AND ORDER

The claimant Randolph L. Ingram requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Court finds that the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 23, 1969, and was thirty-eight years old at the time of the administrative hearing.  He has a tenth grade education and past relevant work as a packager, demolition construction worker, foundry worker, and kitchen helper (Tr. 16, 31). The claimant alleges that he has been unable to work since January 1, 2008, because of carpal tunnel syndrome in his hands and wrists, depression, chronic obstructive pulmonary disease (COPD), and lung problems (Tr. 110).

## Procedural History

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on January 16, 2008.  The Commissioner denied his application.  ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 15, 2009.  The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a) (Tr. 13).  While the ALJ concluded that the claimant was unable to return to his past relevant work, he also found that there

was other work the claimant could perform in the national economy, *i. e.*, fish reel assembler (Tr. 16).  Thus, the ALJ concluded that the claimant was not disabled at step five (Tr. 17).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the treating physician opinion of Dr. Umar Saeed; and ii) by improperly analyzing the effect claimant's carpal tunnel syndrome had on claimant's RFC at step four.  The Court agrees with the claimant's first contention.

The claimant has received treatment from Central Oklahoma Family Medical Center (COFMC) since at least January 2006 (Tr. 186).  At that time, the claimant complained of shoulder pain and numbness in his hands and it was noted that he had a very weak bilateral hand grip (Tr. 186).  He was also assessed with bilateral carpal tunnel syndrome and  injected with Depo-Medrol and prescribed Ambien, and Lortab (Tr. 186). On July 28, 2006, the claimant once again complained of pain in his hands, fingers, and forearms, and it was noted that "both hand grips are amazingly [and] severely weak" but there was no evidence of muscular atrophy in his hands (Tr. 183).  There was, however, a positive Tinel's sign bilaterally and a positive Phalen's sign bilaterally (Tr. 183).  It was noted that the claimant would be referred for an EMG (Tr. 183).  Dr. Umar Saeed, M.D. wrote in a note dated March 7, 2007 that the claimant had been immediately referred for an EMG and to an orthopedist as a result of unchanged numbness, tingling, pain, weakness, and burning in his hands (Tr. 202, 209).  In November 2007, Dr. Saeed noted

that the claimant's carpal tunnel syndrome was worsening (Tr. 196).  Further, the claimant's COPD worsened in January 2008, and Dr. Saeed noted that claimant had a worsening cough, declining exercise tolerance, worsening shortness of breath, and wheezing (Tr. 190).  While claimant had been previously referred for an EMG, a note in the record from OU Physicians indicates that in order to have the EMG done, the claimant would need to pay $400 (Tr. 382).  In March 2008, the claimant's medications included Nexium, and inhaler, Neurontin, Singulair, Claritin, Lortab, Cipro, and Medrol (Tr. 396).

     The claimant's treating physician Dr. Umar Saeed, M.D. submitted two letters: one dated February 8, 2008 and one dated June 10, 2008.  In the February 2008 letter, Dr. Saeed wrote that the claimant was unable to work due to carpal tunnel syndrome and COPD (Tr. 381).  In the June 2008 letter, Dr. Saeed wrote that he was treating the claimant for COPD, dyspnea, respiratory abnormalities, carpal tunnel syndrome, GERD, leg pain, and pedal edema (Tr. 432).  Due to these maladies, Dr. Saeed opined that claimant was unable to work (Tr. 432).  Dr. Saeed also submitted a form entitled "Medical statement regarding physical and mental abilities and limitations for Social Security disability claim" on September 24, 2009 (Tr. 441-42).  Dr. Saeed opined that claimant was capable of standing for 15 minutes at one time, sitting for 15 minutes at one time, working for one hour per day, lifting nothing on either an occasional or frequent basis, bending occasionally, never stooping, never engaging in manipulation with either his left or right hand, raising his left and right arm over shoulder level only occasionally,

and frequently needing to elevate his legs during an eight hour workday (Tr. 441).  Dr. Saeed also wrote that claimant was moderately impaired in his ability to maintain attention and concentration, work with others, and accept supervision (Tr. 442).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527.  *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213

(10th Cir. 2001).  Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

With regard to Dr. Saaed's opinion, the ALJ rightly points out that his opinion that claimant is "unable to work" is a determination that is wholly within the province of the ALJ.  20 C.F.R. § 416.927(e) (stating that opinions that the claimant is "disabled" or "unable to work" are not medical opinions).  As such, the ALJ is not required to attribute any special significance to that opinion.  *See* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2.  However, the ALJ also dismissed Dr. Saeed's opinion for the following reasons: i) that Dr. Saeed "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported[;]" ii) the opinion was not supported from the other evidence of record; and iii) "the record contains a statement from Dr. Waddell, another one of the claimant's physicians, indicating that the claimant can participate in work-related activity" (Tr. 15).

"[A]n ALJ may not make speculative inferences form medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)  In this case, the

ALJ improperly speculated that Dr. Saeed accepted as true and based his opinions solely on the claimant's subjective reports (Tr. 15).  "While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician[.]")*Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987) [citations omitted].  If the ALJ had questions regarding the basis for Dr. Saeed's opinions, then the ALJ should have taken actions to resolve any inconsistencies, *i. e.*, request additional existing records or recontact Dr. Saeed.  20 C.F.R. § 416.920b(c).

In addition, the ALJ failed to acknowledge that Dr. Saeed's records and the records from the COFMC actually *support* Dr. Saeed's opinions.  There are notations that the claimant's carpal tunnel syndrome and COPD were worsening and that claimant's bilateral grip was severely weakened, as well as evidence that the claimant never followed through with his EMG referral because he could not make the required pre-payment of $400.  Claimant also testified that he had been "on a list" for carpal tunnel surgery at OU for two years but had yet to hear from them, noting that "money is a big obstacle" (Tr. 42).  In choosing to reject Dr. Saeed's opinion, the ALJ is compelled to evaluate *all* of the medical evidence, not just the evidence which tends to support his opinion.  *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

The only evidence that does not support Dr. Saeed's opinions come from state reviewing physician opinions who found that the claimant was capable of performing

sedentary work (Tr. 424-29, 434-40).  "[R]eports of *reviewing* physicians are . . . accorded less weight than those of *examining* physicians." *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) ( [citation omitted] [emphasis in original].  The ALJ therefore should have explained how the state reviewing physicians' opinions outweighed the opinion of claimant's treating physician. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(1), (2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2; *Warren v. Barnhart*, 2006 WL 4050700, at *7 (D. Kan. July 10, 2006) (remanding ALJ's decision because it "contain[ed] no analysis of the expert's medical opinion, evaluation of the opinion pursuant to the regulatory factors, or explanation of how the expert's opinion outweigh[ed] that of the treating physician.") [unpublished opinion].

    Because the ALJ failed to properly analyze the treating source opinion of Dr. Umar Saeed as outlined above, the Court concludes that the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record.

## Conclusion

The Court finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 26th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma